UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| B.T., | Case No. 22-cv-02182-LB |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| KILOLO KIJAKAZI, | |
| Defendant. | Re: ECF Nos. 15, 19 |

## INTRODUCTION

The plaintiff B.T. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his claim for social-security disability insurance benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgment, the Commissioner opposed the motion and filed a cross-motion for summary judgment, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision without oral argument. The court grants the Commissioner's cross-motion and denies the plaintiff's motion.

---

[1] Mot. – ECF No. 15. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*; Cross-Mot. – ECF No. 19; Reply – ECF No. 22.

United States District Court
Northern District of California

**STATEMENT**

## 1. Procedural History

The plaintiff applied for social-security disability insurance benefits on June 26, 2019, claiming that his disability began on February 17, 2018.[3] The Commissioner denied his claim on October 16, 2019, and again on January 17, 2020.[4] On February 19, 2020, the plaintiff asked for a hearing before an Administrative Law Judge (ALJ).[5] On December 21, 2020, the ALJ held a hearing and heard testimony from a vocational expert (VE) and the plaintiff.[6] The ALJ issued an unfavorable decision on March 30, 2021.[7] On February 16, 2022, the Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final administrative decision.[8] The plaintiff filed this action on April 7, 2022, and the parties each moved for summary judgment.[9] All parties consented to magistrate-judge jurisdiction.[10]

## 2. Medical Records

The plaintiff contended that he was disabled because of back pain, leg pain, and ankle pain.[11] He said that those conditions resulted from a stroke on December 8, 2017, that left him with neurological damage and depression.[12] Records from the following individuals were submitted at the administrative hearing: (1) Gyorgy Pataki, M.D., a treating doctor;[13] (2) James Luu, D.O., a

---

[3] AR 172. Administrative Record (AR) citations refer to the page numbers in the bottom-right hand corner of the AR.

[4] AR 107; AR 114.

[5] AR 120–21.

[6] AR 51–72.

[7] AR 36–46.

[8] AR 1–3.

[9] Compl. – ECF No. 1; Mot. – ECF No. 15; Cross-Mot. – ECF No. 19.

[10] Consents – ECF Nos. 7, 9.

[11] AR 208.

[12] AR 174; AR 421–22.

[13] AR 323–24; AR 334–35.

United States District Court
Northern District of California

treating doctor;[14] (3) Aparna Dixit, Psy.D., a state consultative examining psychologist;[15] (4) Edie Glantz, M.D., a state consultative examining neurologist;[16] and (5) Mark Becker, Ph.D., Nicholas Rios, Psy.D., H. Jone, M.D., and G. Williams, M.D., state non-examining medical consultants.[17] Because the plaintiff challenges the ALJ's consideration of the medical records, this order summarizes the key disputed opinions fully.

### 2.1. Gyorgy Pataki, M.D. — Treating Doctor

On December 13, 2017, Dr. Gyorgy Pataki, M.D. of Kaiser Permanente examined the plaintiff following a Kaiser emergency-room visit by the plaintiff at which he was diagnosed with a high blood sugar level and referred for diabetes treatment. The plaintiff reported no recurrent symptoms and denied chest pain or shortness of breath. Dr. Pataki diagnosed the plaintiff as having a history of stroke without residual deficits, hypertension, and diabetes type II.[18] On December 5, 2018, Dr. Pataki examined the plaintiff again. He noted no complaints for the musculoskeletal system and that the plaintiff had normal strength.[19] Dr. Pataki ordered labs and a sleep study for fatigue, and advised to consider depression if those tests were negative.[20]

### 2.2. James Luu, D.O. — Treating Doctor

Dr. Luu was the plaintiff's primary-care provider and saw him multiple times in 2018, 2019, and 2020.

On February 17, 2018, Dr. Luu assessed that the plaintiff had a stroke with left side weakness, lower back pain, insomnia, and some depression.[21] In 2018, the plaintiff was seen by Dr. Luu again on May 12, July 28, and October 31. Dr. Luu noted that the plaintiff was unable to work due

---

[14] AR 421–41; AR 511–24.

[15] AR 442–44.

[16] AR 445–48.

[17] AR 73–87; AR 89–105.

[18] AR 334–35; AR 337–39; AR 348.

[19] AR 323–24.

[20] AR 324.

[21] AR 423, 425.

to the stroke, with left side weakness, knee pain, and insomnia.[22] The plaintiff repeatedly said he could not work and reported knee, lower back, and hand pain, and weakness since the stroke.[23]

On January 30, 2019, Dr. Luu noted a decrease in grip strength. On March 23, 2019, Dr. Luu referred the plaintiff to Kaiser Permanente for x-rays for the knee pain.[24] On August 24, 2019, Dr. Luu noted uncontrolled diabetes. In a March 7, 2020 exam, Dr. Luu noted the Commissioner's denial letter concluding that the plaintiff could lift twenty-five to fifty pounds and stand for longer than six hours. Dr. Luu opined that the plaintiff is unable to stand for longer than one hour or lift more than ten pounds.[25]

Dr. Luu provided two letters where he summarized his treatment and findings regarding the plaintiff. Dr. Luu stated that the plaintiff "suffers from stroke with residual weakness on the left side, severe lower back, difficult speaking and memory loss, uncontrolled diabetes, and severe major depression." Dr. Luu opined that "[t]he stroke left him with severe and irreversible neurological damages because of widespread damage to the brain tissue." Dr. Luu further opined that the plaintiff is "incapable of remembering, articulating, learning and memory," and that the stroke affected the plaintiff's daily living activities, because he "is not able to cook, prepare meals, [do] routine laundry, [or] remember taking medications." A physical exam showed a decrease in range of motion by fifty percent for the plaintiff's spine and that the plaintiff cannot walk for more than twenty minutes at a time or sit upright due to extreme lower back pain.[26]

The letters also addressed the plaintiff's depression and diabetes. In the first (undated) letter, Dr. Luu diagnosed the plaintiff as severely depressed based on a "quick inventory of depressive symptomology scores."[27] Dr. Luu's more recent letter of January 18, 2021 largely repeated the

---

[22] AR 424.

[23] AR 426, 518.

[24] AR 426.

[25] AR 518.

[26] AR 421, 512.

[27] AR 421–22, 512–13.

United States District Court
Northern District of California

same diagnoses but addressed the plaintiff's uncontrolled diabetes by stating that it can cause memory loss and numbness and tingling in the plaintiff's feet and hands.[28]

In both letters, Dr. Luu concluded that the plaintiff cannot work in any capacity due to physical and mental impairments, back and leg pain, and severe depression.[29]

### 2.3. Aparna Dixit, Psy.D. — State Consultative Examining Psychologist

Dr. Dixit conducted a mental-status disability evaluation of the plaintiff for the California Department of Social Services on September 12, 2019. Dr. Dixit reviewed the plaintiff's medical history, including records submitted by Dr. Luu.[30]

At the evaluation, the plaintiff reported that he needed help for his grooming and hygiene and with household chores such as laundry, dishes, and trash removal. He said he goes grocery shopping, cooks microwave meals, and drives locally. Dr. Dixit observed that the plaintiff was able to ambulate without assistance, was cooperative, and his speech was coherent, clear, and "100% intelligible." Dr. Dixit found the plaintiff's thoughts to be logical and that his working and short-term memory were unimpaired. The plaintiff was able to solve simple mathematical problems, recite five digits forwards and backwards, follow three-step commands, and do "serial 3s" and "serial 7s."[31]

Dr. Dixit evaluated the plaintiff as having no symptoms suggestive of a thought disorder and no significant cognitive defects. He opined that the plaintiff's ability to follow instructions is moderately impaired, and his ability to work in public and with supervisors and co-workers is moderately impaired.[32]

---

[28] AR 512–513.

[29] AR 421–22, 512–13.

[30] AR 442–44.

[31] AR 443.

[32] AR 444.

### 2.4. Edie Glantz. M.D. — State Consultative Examining Neurologist

Dr. Glantz conducted a neurological evaluation on the plaintiff on September 23, 2019.[33] The plaintiff described the 2017 stroke and said he was sent home from the hospital with a cane but never needed it and does not use it. He reported a history of lower back pain since 2009 with no history of x-rays or surgery, and that the pain is aggravated by standing or walking and decreased by medication. The plaintiff also said he had daily knee pain in both knees for the last ten years without any history of x-rays or surgery, and that the pain was aggravated by sitting but standing and walking alleviated it.[34]

Dr. Glantz conducted a physical examination of the plaintiff. The plaintiff was able to get out of a chair without the use of his arms and was able to get on and off the exam table independently. He was able to walk around the room independently and pick up a paperclip off the table with either hand without difficulty. He was slightly slower for rapid alternative movement in the left side extremities relative to the right and had a normal gait.[35] He had normal range of motion for all musculoskeletal systems including the spine, knees, ankles, shoulders, elbows, wrists, fingers, and hips.[36]

Dr. Glantz concluded that the plaintiff has knee pain with a full range of motion and back pain with a full range of motion. The plaintiff had full strength at the shoulders, elbows, wrists, hands, hips, knees, and ankles. There was no arm drift and no pronator drift. Dr. Glantz also examined the plaintiff's mental status and found the plaintiff's concentration and memory to be intact, including after delay and distraction.[37]

Dr. Glantz diagnosed the plaintiff as having a stroke with left-side weakness, "which has improved and left no residual, except for minimal decrease in coordination of the left-sided

---

[33] AR 445–48.

[34] AR 445.

[35] AR 446.

[36] AR 446–47.

[37] AR 447.

extremities." Dr. Glantz also diagnosed the plaintiff with lower back and knee pain.[38] He assessed that the plaintiff could stand, walk, or sit for up to six hours in a normal eight-hour work day, as well as lift fifty pounds occasionally and twenty-five pounds frequently. Dr. Glantz also opined that the plaintiff can frequently climb stairs, balance, crouch, kneel, and crawl, and can frequently reach overhead, handle, finger, and feel with either upper extremity. Dr. Glantz noted that the plaintiff should avoid ladders, scaffolds, ropes, and unprotected heights.[39]

### 3. Administrative Proceedings

#### 3.1. Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations, one related to the plaintiff's initial application and one at the reconsideration level.

At the initial level, the state doctors found the following impairments to be severe: (1) vascular insult to the brain, (2) dysfunction-major joints, (3) depressive, bipolar and related disorders, and (4) anxiety and obsessive-compulsive disorders.[40] The doctors found the plaintiff to be not disabled despite these impairments.[41]

On reconsideration, the doctors affirmed the finding of the four medical impairments at the initial application.[42] They again found the plaintiff to be not disabled.[43]

#### 3.2. Administrative Hearing

The ALJ held a hearing on December 21, 2020. It was conducted telephonically due to the COVID-19 pandemic. The plaintiff and VE Deborah Detterman testified.[44]

---

[38] *Id.*

[39] AR 448.

[40] AR 79.

[41] AR 86.

[42] AR 95.

[43] AR 104.

[44] AR 51–72.

United States District Court
Northern District of California

### 3.2.1. The Plaintiff's Testimony

The ALJ questioned the plaintiff, who was not represented by counsel.[45] He testified that he is married and lives in a condo with his wife and two other people. His primary language is Vietnamese, and he can read, write, and speak it. He can speak and write only a little English. He attended college in the United States for machine operating, but did not receive a degree. He worked as mechanic in a factory and in a t-shirt printing business.[46]

The plaintiff testified that the stroke impaired his ability to work. His feet and hands are "very weak" and he is "not supposed to stand long. Therefore [he] cannot work." He can stand for only fifteen to twenty minutes and can walk only fifteen meters at one time. He can sit for only fifteen to twenty minutes at one time, and then he needs to lay down. He lays down for four to five hours each day. He also is not able to carry anything because of the hand and foot pain.[47]

The plaintiff reported that he has high blood pressure and high cholesterol. He has sleep apnea and gets only about four hours of sleep. He does not use a machine at night to help him sleep but takes medications to help him sleep. He gets dizzy "sometimes one day, sometimes two days." He also is forgetful and has trouble concentrating, but he testified that if he were to watch a thirty-minute TV show, he could tell the ALJ what happened. He gets along with other people.[48]

The plaintiff described his daily life: he "can't do anything. I just watch TV, sleep, do nothing." His "wife helps [him] with everything." Also, his medical conditions affect his ability to drive and he walks slowly. It is his left hand and foot that he has problems with.[49]

### 3.2.2. VE's Testimony

VE Deborah Detterman testified at the December 21, 2020, hearing.[50] The ALJ asked the VE to classify the plaintiff's prior work according to the Dictionary of Occupational Titles, and the VE

---

[45] AR 59–66.

[46] AR 61–62.

[47] AR 62–64.

[48] AR 63–66.

[49] AR 61, 65–66.

[50] AR 67–71.

responded that the plaintiff worked as a staffing press operator ((light work, SVP 3) and as a machine repairer (heavy work, SVP 7).[51]

The ALJ posed a hypothetical to the VE: a person of the claimant's age, education, and work experience who can "lift, carry, push and/or pull 50 pounds occasionally and 25 pounds frequently and can stand or walk in combination for six hours in an eight-hour work day with normal breaks. The individual can climb ramps and stairs . . . [and] can frequently balance, stoop, kneel, crouch and crawl." This individual "must avoid all exposure to ha[z]ards such as unprotected heights and machinery . . . [and] can understand, remember and carry out simple instructions and tasks with customary breaks." This "individual can make simple work related decisions and can adapt to changes in the work place setting that are consistent with the atonement limitations."[52] The VE testified that the hypothetical person could not perform the plaintiff's past work, but could perform the following jobs: (1) night janitor; (2) hand packager; and (3) laundry worker.[53]

The ALJ then asked the VE how employers handle off-task behavior in competitive, unskilled work. The VE testified that in her opinion, "if a person is off task 15 percent of the time or more this will preclude competitive employment." The ALJ then asked the plaintiff if he had any questions for the VE and he replied, "No, your honor."[54]

### 3.3. ALJ Findings

The ALJ analyzed the five-step process to determine whether the plaintiff was disabled and determined that he was not.[55]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of February 17, 2018.[56]

---

[51] AR 68.

[52] AR 69.

[53] AR 70.

[54] AR 70–71.

[55] AR 36–46.

[56] AR 39.

United States District Court
Northern District of California

At step two, the ALJ found that the plaintiff had the following severe impairments: (1) history of cerebrovascular accident; (2) hypertension; (3) diabetes mellitus type 2; (4) obstructive sleep apnea; (5) lower back and knee pain; and (6) adjustment disorder with mixed depression and anxiety.[57]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[58]

Before reaching step four, the ALJ determined that the plaintiff had the residual functional capacity (RFC) "to perform medium work . . . except that the claimant can lift, carry, push and/or pull 50 pounds occasionally and 25 pounds frequently, can stand or walk in combination for 6 hours in a 8-hour work day with normal breaks," "can sit for 6 hours in an 8-hour work day, "can occasionally climb ramps and stairs," "can frequently balance, stoop, kneel, crouch and crawl," "can understand, remember, and carry out simple instructions and tasks with customary breaks that do not require more than occasional interaction with the general public," and "can adapt to changes in the work setting that are consistent with the aforementioned limitations."[59]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[60]

At step five, the ALJ found that the following jobs were available to the plaintiff: (1) night janitor; (2) hand packager; and (3) laundry worker.[61]

The ALJ found that the plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore concluded that the plaintiff was "not disabled."[62]

---

[57] *Id.*

[58] AR 39–40.

[59] AR 40–44.

[60] AR 44.

[61] AR 44–45.

[62] AR 45–46.

United States District Court
Northern District of California

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Kitchen v. Kijakazi*, --- F.4th --- -, 2023 WL 5965704, at *3 (9th Cir. 2023) (cleaned up). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

16
17

### GOVERNING LAW

18
19
20
21
22
23
24
25

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

26
27
28

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff seeks reversal and remand of the Commissioner's decision on three grounds: (1) the ALJ failed to protect the plaintiff's due process rights given that he lacked counsel, (2) substantial evidence did not support the ALJ's assessment of the medical opinions; and (3) the ALJ did not provide clear and convincing reasons when discrediting the plaintiff's testimony about his symptoms.[63] The court denies the motion and grants the commissioner's cross-motion.

### 1. Whether the Plaintiff was Prejudiced by his Lack of Counsel

The first issue is whether the plaintiff was prejudiced by his lack of counsel.

"Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings." *Vidal v.*

---

[63] Mot. – ECF No. 15 at 2.

United States District Court
Northern District of California

*Harris*, 637 F.2d 710, 714 (9th Cir. 1981). Where a claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and consciensiously probe into, inquire of, and explore for all the relevant facts." *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) (cleaned up). In such a situation, the ALJ "must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (cleaned up). "The issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the [ALJ] met the heavy burden imposed by *Cox*." *Vidal*, 637 F.2d at 714.

Here, the plaintiff contends that the ALJ did only "cursory questioning" of his symptoms and inadequately examined the VE, particularly given the language barrier and his limited education.[64] He specifically points to the ALJ's failure to ask follow-up questions related to memory loss (he has memory issues, but the ALJ asked only if he remembered to take his medication), poor concentration (the ALJ did not follow up on how it affected him), inability to interact with others (there was some confusion over the plaintiff's response), the amount of education the plaintiff completed (ninth grade only versus "some college"), and "the lack of any imaging of [the plaintiff]'s knees or back" (the ALJ did not ask about this but relied on it in part to discredit the plaintiff's testimony). The hearing transcript reflects limited questions — six pages — that did not fully develop the extent and duration of his symptoms. The plaintiff points to cases where courts held that a similar or longer length indicated insufficient questioning. The plaintiff also argues that the ALJ's single hypothetical to the VE was deficient and could have been cured by counsel's cross-examination (specifically, the hypothetical did not include an inability to adapt to change or restrictions on working with coworkers and did not define "customary breaks").[65]

The plaintiff has not demonstrated prejudice or unfairness due to lack of counsel. Although limited questioning is a consideration, it is not dispositive. The plaintiff's cases emphasize this. *See, e.g.*, *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) ("Although the length of a hearing is not dispositive, it is a consideration."). The issue is whether the ALJ "scrupulously and

---

[64] Reply – ECF No. 22 at 2.

[65] *Id.* at 2–5; Mot. – ECF No. 15 at 11–14.

conscientiously" explored all relevant facts, or whether the ALJ made a mistake counsel would have likely corrected. *Cox*, 587 F.2d at 991 (holding that counsel would have likely caught ALJ's misunderstanding of a doctor's letter and the VE's testimony).

To the extent the ALJ could have clarified some matters, it would have been inconsequential to do so. For example, the ALJ's determinations did not turn on whether the plaintiff had completed "some college" education as opposed to only the ninth grade. The plaintiff's ability to interact with others was clarified: he testified "I do get along with other people."[66] Regarding the plaintiff's memory, the ALJ elicited that the plaintiff is "sometimes forgetful."[67] As for his concentration, the ALJ elicited that he would be able to watch a thirty-minute TV program and then tell another person about it.[68] Otherwise, the ALJ validly drew conclusions based on the medical evidence in the record (as discussed below). *Connie P. v. Kijakazi*, No. 22-CV-02751-RMI, 2023 WL 4269765, at *5–6 (N.D. Cal. June 29, 2023) (ALJ went "beyond what was required" with an unrepresented plaintiff where the ALJ did such things as examine the plaintiff's wife and pose several hypotheticals to the VE); *Howland v. Saul*, 804 F. App'x 467, 469 (9th Cir. 2020) (describing a limitation incorporating the "customary breaks" concept as "reasonabl[e]").

## 2. Whether the ALJ Erred in Considering the Medical Evidence

The plaintiff next contends that the ALJ erred in considering the medical evidence by treating all of Dr. Luu's records as opinion and failing to analyze the supportability of the opinions of Dr. Luu, Dr. Dixit, or "the state agency medical consultants."[69] The court denies remand on this ground.

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the

---

[66] AR 66.

[67] AR 65.

[68] *Id.*

[69] Mot. – ECF No. 15 at 14–15.

1   record, together with the rest of the relevant evidence. 20 C.F.R. § 416.920b; *see Orn v. Astrue*,

2   495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a

3   whole and may not affirm simply by isolating a specific quantum of supporting evidence.")

4   (cleaned up).

5       The Social Security Administration promulgated new regulations governing an ALJ's

6   consideration of medical opinions, effective March 27, 2017. The new framework "eliminate[s]

7   the physician hierarchy, deference to specific medical opinions, and assigning weight to a medical

8   opinion." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *14 (N.D.

9   Cal. Mar. 30, 2020) (cleaned up); 20 C.F.R. § 416.920c(a). Likewise, the Ninth Circuit's previous

10  "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or

11  examining doctor's opinion" is "incompatible with the revised regulations." *Woods v. Kijakazi*,

12  32 F.4th 785, 792 (9th Cir. 2022). But the ALJ must still articulate how he or she considered every

13  medical opinion and how persuasive he or she finds each. *Id.*; *V.W.*, 2020 WL 1505716, at *14; 20

14  C.F.R. § 416.920c(b). Persuasiveness is now evaluated based on five factors: "1) supportability; 2)

15  consistency; 3) relationship with the claimant; 4) specialization; and 5) 'other factors.'" *V.W.*,

16  2020 WL 1505716, at *13 (citing 20 C.F.R. § 416.920c(c)); *Woods*, 32 F.4th at 792 (factors

17  include "the length and purpose of the treatment relationship, the frequency of examinations, the

18  kinds and extent of examinations that the medical source has performed or ordered from

19  specialists, and whether the medical source has examined the claimant or merely reviewed the

20  claimant's records").

21      Supportability and consistency are the two most important factors, and the ALJ is required to

22  specifically address them. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ cannot reject an examining or

23  treating doctor's opinion as unsupported or inconsistent without providing an explanation

24  supported by substantial evidence." *Kitchen*, 2023 WL 5965704 at *5. Regarding supportability,

25  "[t]he more relevant the objective medical evidence and supporting explanations presented by a

26  medical source are to support his or her medical opinion(s) or prior administrative medical

27  finding(s), the more persuasive the medical opinions or prior administrative medical finding(s)

28  will be." 20 C.F.R. § 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical

United States District Court
Northern District of California

1    opinion(s) or prior administrative medical finding(s) is with the evidence from other medical

2    sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

3    administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

4         Unlike with supportability and consistency, the ALJ is not normally required to explain how

5    they considered the other factors. *V.W.*, 2020 WL 1505716, at *14; 20 C.F.R. § 416.920c(b)(2).

6    But the ALJ is required to do so where "two or more medical opinions or prior administrative

7    medical findings about the same issue are both equally well-supported . . . and consistent with the

8    record . . . but are not exactly the same." 20 C.F.R. § 416.920c(b)(3).

9         First, substantial evidence supports the ALJ's finding that Dr. Luu's opinion was unpersuasive.

10   The ALJ noted that Dr. Luu's opinion was not supported by his own medical records, lacked

11   diagnostic testing, and was largely based on the plaintiff's self-reporting.[70] This reasoning

12   addresses the "relevan[ce] [of] the objective medical evidence and supporting explanations

13   presented by [Dr. Luu]." 20 C.F.R. § 416.920c(c)(1).

14        The plaintiff contends that the ALJ erred because she treated Dr. Luu's objective findings,

15   such as clinical signs and testing, as "mere opinion evidence," which in turn prevented the ALJ

16   from considering those objective findings in evaluating the other medical opinions in the record

17   (because the ALJ had already dismissed the objective findings as unpersuasive).[71] But in saying

18   that Dr. Luu's "opinions essentially appear to be based on the claimant's self report," the ALJ was

19   referring to Dr. Luu's conclusions rather than the objective findings themselves.[72]

20        Second, as for the state non-examining medical consultants (Mark Becker, Ph.D., Nicholas

21   Rios, Psy.D., H. Jone, M.D., and G. Williams, M.D.), the issue is closer. Their review was of

22   course limited to the medical records. Regarding the consultants' mental assessments, the ALJ

23   found that their opinions were "generally consistent" with the medical evidence but that the ALJ

24   would credit additional limitations in "understanding, remembering and applying information" in

25

26   _____

27   [70] AR 43.

     [71] Mot. – ECF No. 15 at 14–15.

28   [72] AR 43.

United States District Court
Northern District of California

1   light of the records from Dr. Dixit and the fact that the "3–4 step commands" (relied on by the

2   consultants as something the plaintiff was able to follow) were undefined. The ALJ declined to go

3   further with those limitations given that (again as show by Dr. Dixit's records) the plaintiff "could

4   perform simple mathematical problems, do serial 3s [and] 7s and follow a 3-step command." And

5   regarding physical limitations (that is, Dr. Jone and Dr. Williams' findings), the ALJ similarly

6   compared their opinions to the medical records (which in the case of non-examining consultants is

7   an exercise relevant to both supportability and consistency). The ALJ found these opinions

8   persuasive, in part because a prior medical record (relied on by the non-examining consultants)

9   showed minimal residual effects from the plaintiff's stroke.[73] Overall, the ALJ provided

10   supportability explanations supported by substantial evidence. *Kitchen*, 2023 WL 5965704 at *5;

11   *Shaun H. v. Comm'r, Soc. Sec. Admin.*, No. 2:21-CV-00993-HL, 2022 WL 2955243, at *5 (D. Or.

12   June 15, 2022) ("Regarding supportability, the ALJ noted that all the state agency medical

13   consultants supported their findings with the medical evidence available at the time that the

14   consultants prepared their reports."), *R. & R. adopted*, *Hall v. Comm'r, Soc. Sec. Admin.*, No.

15   2:21-CV-00993-HL, 2022 WL 2953648 (D. Or. July 26, 2022).

16       Third, the ALJ adequately explained supportability for the state consultative examining

17   neurologist, Dr. Glantz. Although in the section of her decision titled "Opinions" the ALJ said

18   only that Dr. Glantz's opinion (that the plaintiff has fairly substantial functional capacity) is

19   "supported by [his] examination report,"[74] this should be read in context with the ALJ's earlier

20   summary of that report.[75] The plaintiff "told [Dr. Glantz] that he was sent home with a cane when

21   he was discharged from the hospital [after the stroke], but he never had the need to use the cane."

22   During the examination, the plaintiff "ambulated without an assistive device and exhibited no

23   sensory, motor or reflex deficits," and complained of "chronic lower back and bilateral knee pain"

24

25

---

26   [73] AR 43; AR 100 (consultants relied on minimal residual physical effects from the stroke); AR 84–85, 102 (consultants relied on the plaintiff's ability to follow a three-step command).

27   [74] AR 44.

28   [75] AR 41–42.

1 | but "exhibited normal range of motion in his back and both knees."[76] These descriptions convey

2 | that Dr. Glantz's report undermines the notion that the plaintiff is disabled. The ALJ thus found

3 | Dr. Glantz's opinion persuasive, but modified slightly his recommended limitations in light of the

4 | plaintiff's noted reports of pain.[77] All of this amounts to a "supportability explanation[] supported

5 | by substantial evidence." *Kitchen*, 2023 WL 5965704 at *5.

6 | It is true that the court must "review the ALJ's decision based on the reasoning and factual

7 | findings offered by the ALJ — not *post hoc* rationalizations that attempt to intuit what the

8 | adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225

9 | (9th Cir. 2009). Put another way, the court cannot "review [an ALJ] finding based on what [the

10 | court] assume[s] the ALJ to have determined," because "meaningful review of an administrative

11 | decision requires access to the facts and reasons supporting that decision." *Id.* at 1226. But here,

12 | the court is not assuming or rationalizing anything, even if the ALJ's decision was terse at times.

13 | *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision

14 | as a whole[.]"); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court,

15 | we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's

16 | opinion."); *Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than

17 | ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (cleaned up).

18 | Fourth, the plaintiff argues that the ALJ did not discuss supportability for Dr. Dixit's opinion.

19 | The analysis is similar to that for Dr. Glantz: in the "Opinions" section of the decision, the ALJ

20 | said only that Dr. Dixit's opinion "is generally persuasive."[78] But the ALJ also incorporated Dr.

21 | Dixit's findings and opinions into the "Mental Impairments" section of the decision. Dr. Dixit

22 | "not[ed] the [plaintiff] had some evidence of depression and anxiety, but found no significant

23 | cognitive deficits." Also, "[d]uring the evaluation, the [plaintiff]'s memory and abstract thinking

24 | were unimpaired," and he was able to follow a three-step command and perform serial sevens.[79]

25 |

---

26 | [76] *Id.*

27 | [77] AR 44.

27 | [78] *Id.*

28 | [79] AR 42.

Reading the ALJ's decision as a whole, these descriptions convey the supportability of Dr. Dixit's opinion.

### 3. Whether the ALJ Erred by Discounting the Plaintiff's Testimony

The plaintiff also asserts that the ALJ erred by failing to provide clear and convincing reasons for rejecting his testimony about the severity of his symptoms.[80] The court denies the motion.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112, *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020). "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*; *see also* 20 C.F.R. § 404.1529(a). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (in order to have a meaningful appellate review, the ALJ must explain its reasoning; "[g]eneral findings are insufficient"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (cleaned up); *see also* 20 C.F.R. § 416.929. And the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

---

[80] Mot. – ECF 15 at 15–17.

1    Here, the plaintiff specifically contests the ALJ's discrediting his testimony regarding

2    weakness in the left side, slowed pace, difficulty being on his feet, fatigue and need for

3    reminders.[81]

4    The ALJ considered inconsistencies between the plaintiff's testimony and the objective

5    medical record. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ . . . considered

6    the objective medical findings in discounting Burch's testimony[.]"). For left-side weakness, the

7    ALJ noted that in the plaintiff's follow-up with Dr. Pataki on December 13, 2017, the plaintiff

8    denied any recurrent symptoms.[82] Additionally, the ALJ looked to the consultative exam with Dr.

9    Glantz in September 2019, where Dr. Glantz determined that the plaintiff had no physical residual

10   effects from the stroke other than a "minimal" decrease in coordination in using his left-side

11   extremities. For the slowed pace and difficulty being on his feet, the ALJ pointed to the

12   consultative exam with Dr. Glantz in September 2019. At that exam, the plaintiff told Dr. Glantz

13   he was sent home from the hospital with a cane, but "never had the need to use the cane." The

14   claimant also ambulated without an assistive device, had full range of motion in his knees and

15   back, and exhibited normal strength.[83] And for the plaintiff's fatigue and memory loss, the ALJ

16   credited Dr. Dixit's evaluation that found no significant cognitive deficits.[84]

17   The ALJ also relied partly on the plaintiff's activities of daily living. *Molina*, 674 F.3d at 1113

18   ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for

19   discrediting the claimant's testimony to the extent that they contradict claims of a totally

20   debilitating impairment."). In the plaintiff's consultative exam with Dr. Dixit, he reported that he

21   was able to drive, go grocery shopping, and (with help) perform household chores such as washing

22   dishes, doing laundry, and taking the trash out.[85]

---

[81] *Id.* at 16.

[82] AR 42, 334–35.

[83] AR 41–42, 445–48.

[84] AR 42.

[85] AR 40, 42.

United States District Court
Northern District of California

Overall, this evidence contradicts the plaintiff's testimony with specific, clear and convincing reasons. *See, e.g.*, *Dixon v. Saul*, 411 F. Supp. 3d 837, 854–55 (N.D. Cal. 2019) (the ALJ articulated clear and convincing reasons by relying on the objective medical evidence, combined with activities of daily living, to discount the plaintiff's testimony).

## CONCLUSION

Although the ALJ's explanations could have been more clear, the court must defer to the ALJ's decision where the evidence in the administrative record supports the ALJ's decision and a different outcome. *Tackett*, 180 F.3d at 1097–98. The court grants the Commissioner's cross-motion for summary judgment and denies the plaintiff's motion for summary judgment. This resolves ECF Nos. 15 and 19.

**IT IS SO ORDERED.**

Dated: September 26, 2023

_____
LAUREL BEELER
United States Magistrate Judge